GENTRY *v.* ALLEY.

5-1381                              306 S. W. 2d 695

Opinion delivered November 11, 1957.

O. D. *Pendergrass* and *Holt, Park & Holt,* for appellant.

*Arthur N. Wood, Fitton & Adams* and *Arnold M. Adams,* for appellee.

Paul Ward, Associate Justice. This litigation is over microfilm copies of abstract indices of real estate records in Marion County.

*Factual Back Ground.* Most of the facts are not in dispute and are, substantially and briefly, as here set out.

Appellee, Don Alley, had for some years prior to 1949 been engaged in the abstract business in Baxter County, during which time one of the defendants, Nellie Cooper, had also been likewise engaged in the same county. In June of said year Alley bought a complete set of abstract books or, as sometimes referred to, abstract indices in the adjoining county of Marion. This set of books or indices was operated under the name of Berry Land and Abstract Company. It is important here to point out that the Bull Shoals Dam project had been under way in Marion County for some time, that, consequently, a great demand for abstracts had arisen,

and that this demand was met by competitive bidding. One of the successful bidders was the Ozark Title Company of Fort Smith. However the Ozark Company did not have a set of abstract books, so in 1947 they contracted with the said Berry Abstract Company to film and use its indices with strict limitations imposed. When Alley bought out the Berry Abstract Company he also bought all rights incident to the filming contract first mentioned.

On or about November 1st, 1956 the Ozark Company, contrary to the express provisions of the filming contract, sold the indices film to appellants, Ernie Gentry and Earl Linton.

Upon learning that Gentry and Linton had purchased the film and that they were about to use the same to conduct an abstract business in Marion County, Alley promptly filed a complaint, asking that the Ozark Title Company be forced to comply with its contract with the Berry Land & Abstract Company, that the microfilm and all copies thereof be delivered to Alley, that he have judgment against the Ozark Title Company for breach of contract, and that Gentry, Linton and Cooper be enjoined from using the film (or copies thereof) for making abstracts.

The principal defense relied on by Gentry and Linton was that they were innocent purchasers for value of the film in question. They also pleaded laches and the statute of limitations, but apparently abandon these on appeal.

After a full hearing of the matter on its merits the Chancellor ordered Gentry and Linton to deliver to the Clerk of the Court forthwith the original film of said indices together with all copies of the same, to be later turned over to appellee; he enjoined them, their heirs and assigns from using information extracted from said films, and; he dismissed the complaint against Nellie Cooper. No personal service was had on F. M. Blood who, as an employee of the Ozark Title Company, had actually made the film.

We have concluded that the decree of the trial court must be affirmed upon the grounds hereafter discussed.

The Chancellor, after the submissions of briefs by both sides, made written Findings and Holdings which take up eight pages of the record, and which reflect exhaustive research of the authorities. In these Findings and Holdings he reached the conclusion that appellee (through his contract with the Berry Land and Abstract Co.) had literary property rights in the indices, that he had not released those rights by permitting the film to be made under the restrictions of the contract, and that consequently Gentry and Linton received no title to the film and particularly to the information contained in the film. We want to here acknowledge the assistance we often receive from these written findings by the Chancellors. However we find it unnecessary to pass upon the merits of the legal conclusions announced by the Chancellor, because we sustain the decree on an entirely different ground which he rejected.

After a careful review of the testimony and considering the surrounding facts and circumstances, we are led to conclude that Gentry and Linton are not innocent purchasers for value as those words have been construed by the courts. We will mention some of the things that lead us to this conclusion.

*One.* While this litigation involves only one film —that of the indices of appellee's abstract books—the record discloses that Blood, as an employee of the Ozark Title Company, also took 56 other films of the records of Marion County and that Gentry and Linton purchased these 56 films at the same time they purchased the other one. The purchase price for all 57 films was only $500. On the face of it, this appears to be a small consideration, calculated to raise suspicions. It was testified that it would take a person one and one half years, working diligently, to prepare only the indices for the purpose of making abstracts in Marion County. Not only so, but Linton himself practically admits they got the indices for nothing. Q. "You mean you did buy films from a man in Tulsa (Blood) without inquiring the source of

them?" A. "We were interested in the county films also (the 56 films mentioned above). We figured they were worth what we paid for them." No one questions Gentry and Linton's right to the latter films of course. In 77 C. J. S. we find at page 1092, under the title of SALES, *Adequacy of Price,* the following: "Inadequacy of price, when very great, is of itself evidence to a purchaser of infirmity in his seller's title, and consideration is to be given it, in connection with other circumstances, in determining whether a buyer is a purchaser without notice." Also at page 1099, same volume, it is stated: "The consideration, in order to be effective to bring a transfer within the doctrine of *bona fide* purchase, should be an adequate valuable consideration, or a fair consideration, but it need not be up to the full price of the goods."

*Two.* The evidence disclosed by the record forces the conclusion that Gentry and Linton had information which, if reasonably acted upon in good faith, would have disclosed to them the true factual situation regarding the microfilm in question. It was not necessary for the testimony to show they had actual knowledge that Alley was the owner of, or that Blood and the Ozark Title Company had no title to, the film. This principle of law has been repeatedly and consistently stated in our decisions. In the case of *Fomby* v. *Colquitt,* 56 Ark. 537, 20 S. W. 413, appellee furnished supplies to one Pyle and took a mortgage on land therefor, without actual knowledge of the fact that Pyle had previously sold part of his land to a Mrs. Perritt. In dealing with the question of priority of appellee's lien, the court said: . . . "if he had notice of circumstances that ought to have put a prudent business man upon inquiry, and he failed to make inquiry, he was not an innocent purchaser." To the same effect are *McKenzie* v. *Rumph,* 171 Ark. 791, 286 S. W. 1022 and *Vaughn* v. *Dossett,* 219 Ark. 505, 243 S. W. 2d 565.

The record discloses many facts and circumstances which were calculated to have aroused Gentry and Linton's curiosity as to the history and ownership of the questioned film, and very little inquiry would have dis-

closed the true facts. All either of them had to do was to inquire of the one logical person to ask—Alley, and they had daily opportunity to do so. They were apparently relying on the expert advice of Nellie Cooper who had been in the abstract business for many years in a county adjoining, and who was naturally acquainted with the abstractors in Marion County. It is obvious that Nellie Cooper, as well as Gentry and Linton, knew the film was taken from a set of abstract books in Marion County. In fact the film itself revealed that fact. The record discloses that they knew there were only two sets of abstract books in Marion County. One was owned by appellee, and they knew the film was not a copy of the other set because they had rejected that set as being unreliable or inaccurate. We also gather from the record that appellants knew something about the existence of a film contract with one of the Marion County abstract companies. Their testimony was that they hired a man to search the records of that county to see if such a contract had been placed of record. In order to make this search the man worked in the same building—perhaps the same room—with appellee, and yet he made no inquiry of appellee.

We cannot agree with appellants that appellee is barred by the statute of limitations or is guilty of laches. It is undisputed that the Ozark Title Company had a right to a limited use of the disputed film as long as titles to dam-site lands were being processed. Appellee testified that this work is just now being completed. He also said that he never learned of appellants' purchase of the disputed film until about a month before this suit was filed by him.

Appellee is denied relief on his cross appeal because there is no proof that Nellie Cooper is associated with Gentry and Linton in trying to establish an abstract business in Marion County.

The trial court was correct in enjoining Gentry and Linton from using the indices film and ordering them to deliver it and all copies to appellee. Anything less would have been an empty victory for appellee, since it

was shown that the Ozark Title Company is insolvent, and in fact is now nonexistent as a business concern.

Affirmed.

ROBINSON, J., dissents.

HOLT, J., not participating.