Mack KELLUM *v.* Bartus M. GRAY, Sr.
and Betty GRAY

CA 79-124                                    590 S.W. 2d 33

Opinion delivered October 10, 1979
[Petition for rehearing denied November 28, 1979.]
and released for publication November 28, 1979

*Kenneth E. Suggs,* for appellant.

*Mike Wilson* of *Wilson, Dougherty & Mills,* for appellees.

DAVID NEWBERN, Judge. This case was appealed to the Arkansas Supreme Court and assigned to the Court of Appeals pursuant to Arkansas Supreme Court Rule 29(3).

The chancellor awarded rescission of a real estate contract upon finding a breach of the contract by the appellant due to his failure to perform within a reasonable time. We affirm that result.

Mr. and Mrs. Gray, the appellees, agreed to buy, and Mr. Kellum, the appellant, agreed to sell a house and lot for $138,500. The house was in the final construction phase, and the agreement provided Mr. Kellum was to finish the house with carpets, drapes, and other "custom" items selected by the Grays. Shortly after February 27, 1978, the date the agreement was entered, the parties began to argue. Mr. Gray, a long-time real estate dealer, heard some things about Mr. Kellum's business reputation of which he did not approve, and he found Mr. Kellum argumentative with respect to the completion of the house. On March 13, 1978, the parties had a confrontation. Their descriptions of it differ. Mr. Gray said he offered to rescind the contract and allow Mr. Kellum to retain $5,000 of the $10,000 earnest money the

Grays had paid if Mr. Kellum would accept the offer. Mr. Kellum's version was that the Grays said they were backing out of the deal and demanded $5,000 of their $10,000 be returned. At that meeting, Mr. Kellum asked Mrs. Gray if the Grays had purchased the house next door to the one in question, and she said they had.

The contract specifically provided the $10,000 would become liquidated damages if the buyers defaulted. Kellum says his posture thereafter became that of regarding the $10,-000 as forfeited and the contract terminated because of the Grays' repudiation. The Grays take the position they were entitled to performance because they had only offered to rescind and their offer was not accepted.

The chancellor, in his findings at the end of the trial and statements in his decree, said several highly inconsistent things. He said the parties had rescinded the contract, time was of the essence in the contract, and Mr. Kellum had failed to perform in a reasonable time. If the contract was rescinded, no performance by Kellum was required. If time was of the essence, then Kellum was required to perform at a specific time, and the "reasonable time" standard would not have applied. There was no evidence supportive of the conclusion that time was of the essence.

Although we find the chancellor's statements confusing, we are not bound by them on this de novo review, and we can review the record and reach the same result he reached despite them. See, *e.g.*, *Gentry v. Allen*, 228 Ark. 236, 306 S.W.2d 695 (1957).

Neither side questions the existence of the contract or that Mr. Kellum has not transferred the property to the Grays. The only question is whether he was justified in his refusal to perform. To prove an anticipatory repudiation of a contract, one must show a present, positive and unequivocal refusal to perform. *Meinhardt v. Investment Builders Properties Co.*, 518 P. 2d 1376 (Colo. App. 1974); *Rest. Contracts*, §318 (1932). On that issue, Kellum had the burden of proof as he would on almost any factual assertion he might have urged as a defense. *Armstrong & Co. v. Ben Pearson, Inc.*, 294 F. Supp. 163 (E.D. Ark. 1967); *Coast Pump Associates* v.

*Stephen Tyler Corp.*, 62 Cal. App. 3d 421, 133 Cal. Rptr. 88 (1976); *Haas v. Cohen*, 295 N.E. 28 (Ill. App. 1973); *Audrey Apartments v. Kornegay*, 255 So. 2d 792 (La. App. 1971). He presented only his own testimony which was controverted by that of Mr. Gray. In addition, the Grays presented, as exhibits, copies of correspondence between the parties. In a letter of March 21, 1978, Mr. Kellum's attorney conveyed to the Grays' attorney an offer to release them from the contract under certain conditions including retention of $5,000 of the $10,000 deposit and retention of the remainder of it to the extent he sustained loss in a subsequent sale of the house. The letter is evidence that Mr. Kellum did not at that date regard the $10,000 as forfeited. On April 14, 1978, his attorney wrote a letter saying the "deposit" was forfeited. On April 21, 1978, the Grays responded in a letter demanding a return of $5,000 or performance within 60 days. The complaint was filed July 31, 1978.

In view of the entire record in this case, we cannot find that Mr. Kellum sustained his burden of proving the Grays repudiated their agreement with him in such a manner as to excuse his performance. Even if the record could be regarded as showing an anticipatory repudiation by the Grays, there is no evidence whatever that Mr. Kellum brought suit or materially changed his position before the Grays' letter of April 21, 1978, informing him of their willingness to perform. Thus clear evidence of repudiation would be meaningless in view of this retraction. *Rest. Contracts,* §319 (1932).

It is enough to say here that Mr. Kellum has not sustained his burden of proof on the issue of repudiation. He has failed to perform within a reasonable time, and rescission with restitution of the earnest money is an appropriate remedy. *Economy Swimming Pool Co. v. Freeling,* 236 Ark. 888, 370 S.W.2d 438 (1963). See also, *Hogue v. Pellerin Laundry Machinery Sales Co., Inc.,* 352 F.2d 772 (8th Cir. 1965).

Affirmed.