NO. 07-03-0398-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 1, 2005

_____

DAVID CHILDERS AND WIFE, JEANETTE CHILDERS, APPELLANTS

V.

DR. GEORGE R. WALTERS, M.D., ET AL., APPELLEES

_____

FROM THE 72nd DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-518,673; HONORABLE J. BLAIR CHERRY, JR., JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

David Childers and wife Jeanette Childers appeal the trial court's order granting the

motion for summary judgment filed by appellees George R. Walters, M.D., *et al.*, in

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

response to their health care liability claim.  By a sole issue, the Childers contend the trial court erred in granting Walters, *et al.*'*s* motion for summary judgment.[2]  We affirm.

In the summer of 1997, David Childers became aware of LASIK surgery and scheduled an appointment with Dr. Walters at the Lubbock Regional Eye Center.  Childers did not see Dr. Walters during this visit and was instead examined by a staff member and informed he was not a good candidate for LASIK surgery because of the poor condition of his eyes.  According to his deposition, he could not recall the name of the person who examined him or whether that person was a doctor.  In 1999, after attending a seminar given by Dr. Walters on LASIK technology, Childers scheduled an appointment for September 29 for an examination and evaluation.  Childers was examined by technician Jim Hudak and did not see Dr. Walters during that visit.

Doctor Walters performed LASIK surgery on Childers on Friday, October 8, 1999.  According to Childers, while he was in a recovery room, Dr. Walters told him his surgery "went okay," but added there was a possibility he was allergic to the anesthetic drops which would delay the healing process.  The following Monday and Tuesday, Childers was seen by Hudak for his post-surgery exams and complained his vision was still blurred.  He was told his vision had not improved because the cells had not grown back due to the allergic reaction to the drops.  Nevertheless, he was instructed to continue using the drops and told

---

[2]*See* Malooly Bros., Inc. v. Napier, 419 S.W.2d 119, 121 (Tex. 1970).

he would be contacted from someone in the Amarillo office.  Childers and his wife drove to Amarillo where he was examined by Dr. Tom Baker and then returned to Lubbock.

Childers did not see Dr. Walters again until approximately two weeks after the surgery and was again told his recovery was slow due to the allergic reaction.  During the months following the surgery, Dr. Walters became concerned and suspected Childers was suffering from dry eye syndrome.  According to Dr. Walters's affidavit, on April 18, 2000, Childers came to his office to schedule an appointment and expressed a loss in confidence and requested a second opinion.

A friend and colleague of Childers's recommended he see Dr. John B. Bowen, O.D., for a second opinion.  On May 4, 2000, he was examined by Dr. Bowen, who, without criticizing Dr. Walters, stated he had never seen results like Childers's from laser surgery. Concerned with Childers's dissatisfaction, Dr. Walters recommended he see Dr. Henry Gelender, a cornea expert, for debridement–manual removal of epithelial cells.  On June 1, 2000, Dr. Gelender diagnosed Childers with basement membrane corneal dystrophy and also performed debridement in Childers's left eye followed by a repeat treatment on July 24, 2000.  Childers was treated by Dr. Gelender until November 2000, and the summary judgment evidence shows his visual acuity improved while under Dr. Gelender's care. Doctor Gelender recommended that Childers return to Dr. Walters for follow-up treatment. He also concluded that most of Childers's problems were related to the dystrophy and not the allergic reaction to the anesthetic drops.

3

In July 2001, Dr. Walters referred Childers to Dr. Rhea L. Siatkowski in Oklahoma City. After only one visit, she determined Childers could be treated in Lubbock by Dr. David McCartney. Doctor McCartney concluded that Childers had not been a good candidate for LASIK surgery. Childers became a regular patient of Dr. McCartney's and his last appointment with Dr. Walters was July 13, 2001.

Pursuant to section 4.01 of the Texas Medical Liability and Insurance Improvement Act,[3] on March 1, 2002, Dr. Walters was notified in writing that Childers was asserting a health care liability claim against him. Suit was filed on July 18, 2002, and Dr. Walters filed his answer alleging, among other matters, the two year statute of limitations as an affirmative defense. *See* Art. 4590i, § 10.01. Upon completion of discovery, Dr. Walters filed a motion for summary judgment on the sole ground of limitations, which the trial court granted.

Standard of Review

In reviewing a summary judgment, this Court must apply the standards established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985):

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

---

[3]*See* former Tex. Rev. Civ. Stat. Ann. art. 4590i, now codified at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001 - 74.507 (Vernon Pamph. Supp. 2004-05). *See also* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 864, 866.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant must either prove all essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c).

Childers contends the trial court erred when it granted Dr. Walters's motion for summary judgment. Specifically, he contends (1) all claims asserted by him were viable and not time barred by article 4590i, section 10.01, and (2) his claims were viable at the time they were brought due to fraudulent concealment. We disagree.

Health care liability claims filed prior to September 1, 2003, are governed by article 4590i of the Texas Medical Liability and Insurance Improvement Act.[4] The Act provides that suit be brought within two years of the occurrence of the breach or tort or the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. Art. 4590i, § 10.01. When the precise date of the negligence can be ascertained, limitations begins to run on that date and subsequent treatment is immaterial. *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex. 1998). Childers does not contend that follow-up care caused any injuries and he did not present any summary judgment evidence that Dr. Walters was negligent in his follow-up care. *See* *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex. 1993). Thus, the ascertainable date of the surgery, *i.e.*, October 8, 1999, began the limitations period. Childers was required to file suit by October 8, 2001, unless he could establish the limitations period had been tolled. *See* Art. 4590i, § 4.01(c) (providing that limitations is tolled for 75 days following the giving of notice as provided in the Act). *See also* Borderlon v. Peck, 661 S.W.2d 907, 909 (Tex. 1983).

---

[4]Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 864, 899.

By his response to Walters's motion for summary judgment, Childers alleged fraudulent concealment. During his deposition he testified he believed Dr. Gelender and Dr. Siatkowski were in "cahoots" with Dr. Walters. Although Dr. Walters owed a duty to discover a negligent act or that an injury had occurred and a failure to disclose constitutes fraudulent concealment, the estoppel effect ended when Childers learned of facts, conditions, or circumstances that would have caused a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action. *See* Clements v. Conard, 21 S.W.3d 514, 521 (Tex.App.--Amarillo 2000, pet. denied); Thames v. Dennison, 821 S.W.2d 380, 384 (Tex.App.--Austin 1991, writ denied).

According to the evidence, in April 1990, when Childers lost confidence in Dr. Walters, he sought a second opinion from Dr. Bowen on May 4, 2000, on advice from a colleague and without Dr. Walters's recommendation. Dr. Walters also provided for other opinions and made arrangements for Childers to see Dr. Gelender and Dr. Siatkowski. Although Childers contended the doctors acted in concert, he did not produce any evidence to support his suspicion. To the contrary, Childers testified that Dr. Bowen was not critical of Dr. Walters's performance of the surgery, but only surprised at the result. Childers cannot rely on the tolling doctrine of fraudulent concealment after he admitted a loss in confidence and sought a second opinion on his own initiative in April 2000. *See* Velsicol Chemical Corp. v. Winograd, 956 S.W.2d 529, 531 (Tex. 1997).

Although Childers gave notice of his claim on March 1, 2002, as required by section 4.01(a) of the Act, which would have tolled the limitations period for 75 days per sub-paragraph (c), we conclude the tolling provision did not apply because suit was not filed until July 18, 2002, well beyond the limitations period. *See* De Checa v. Diagnostic Center Hosp., Inc., 852 S.W.2d 935, 937 (Tex. 1993); Simmons v. Healthcare Centers of Texas, Inc., 55 S.W.3d 674, 677, (Tex-App.--Texarkana 2001, no pet.). The Childers' sole issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice